**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**WESTERN DIVISION**

HENRY HALLAGER,

                Plaintiff,

      v.

ACCOUNT RESOLUTION SERVICES,
LLC; EXPERIAN INFORMATION
SOLUTIONS, INC.,

                Defendants.

Case No. 5:20-cv-00354-BO

## OPPOSITION TO PLAINTIFF'S MOTION FOR PROTECTIVE ORDER

### I.      INTRODUCTION

Plaintiff Henry Hallager ("Plaintiff"), though counsel, filed a Motion for Protective order on September 1, 2021, seeking to excuse his attendance at a deposition scheduled for September 3, 2021. He also seeks to require the deposition to be taken via remote means. This is simply the latest attempt by Plaintiff to delay these proceedings solely as a result of his lack of diligence in pursuing this matter. The motion should be summarily denied.

### II.      BACKGROUND

Plaintiff filed this action on July 2, 2020 against Account Resolution Services, LLC[1] ("ARS") and Experian Information Solutions, Inc. ("Experian"). *See* DE 1. Chad Diamond appears as counsel on the complaint and, until July 7, 2021, he was the only attorney who had formally appeared.[2] For reasons that have not yet been explained, Plaintiff did not even attempt

---

[1] The correct name of ARS is Healthcare Revenue Recovery Group, LLC d/b/a ARS Account Resolution Services.

[2] Mr. Diamond filed a Notice of Special Appearance on behalf of Daniel Zemel on July 6, 2021, which the Court rejected because each attorney must file his or her own notice of appearance. Mr. Zemel thereafter filed a Notice of Special Appearance on July 7, 2021.

1

service of the summons and complaint on ARS until October 13, 2020. *See* DE 14-1. ARS filed a motion to dismiss based on this failure, which the Court ultimately denied, and Plaintiff filed an untimely opposition. *See* DE 14-15, 18, and 22. Experian filed an answer. *See* DE 11. The parties held their Rule 26(f) conference on December 11, 2020 and agreed to submit Rule 26(a)(1) initial disclosures on or before January 8, 2021. *See* DE 20. The Court thereafter entered Scheduling Order, in which it largely accepted the dates proposed by the parties, with some slight modifications. *See* DE 21. The Court set the initial disclosure deadline for January 8, 2021. *Id.*

On January 8, 2021, both ARS and Experian served their Rule 26(a)(1) disclosures on all parties. The undersigned still has not received Plaintiff's initial disclosures, nor has the undersigned received any indication that Plaintiff ever served or attempted to serve his initial disclosures. The Court denied ARS' motion to dismiss on March 4, 2021, and ARS filed an answer on March 17, 2021. *See* DE 22-23. In an effort to move the case forward and properly defend itself in this action, ARS served written discovery on Plaintiff on April 16, 2021. *See* DE 27-1. On that same date, by separate email and mailing, ARS also served Plaintiff with a notice of deposition to depose him in person on June 2, 2021. A true and correct copy of the notice of deposition is attached hereto as **Exhibit 1.** Later that day, the undersigned received an email from Steven Benedict, who formerly worked at Mr. Zemel's firm, which indicated receipt of the deposition notice and stated, "I will get back to you on if the date works for our client." A true and correct copy of the email is attached hereto as **Exhibit 2.** The undersigned never heard anything further from Mr. Benedict about whether the date worked for Plaintiff, and never received any objections to the deposition being in person.

Mr. Benedict's email also requested Defendants "consent to amend/extend the scheduling order by 2 months to allow for expert discovery." Plaintiff thereafter moved to extend the deadline for expert discovery by two months, which the Court granted, setting Plaintiff's expert disclosure

deadline at July 19, 2021. *See* DE 24-25. However, despite representing to the undersigned and the Court that the requested extension was necessary to obtain expert discovery, the undersigned has yet to receive any expert witness disclosures from Plaintiff. On May 27, 2021, the undersigned sent Mr. Diamond and Mr. Benedict a letter regarding Plaintiff's delinquent discovery responses.[3] *See* DE 27-2. The letter also stated:

> [W]e need Mr. Hallager's responses prior to taking his deposition. We will therefore be postponing the deposition of Mr. Hallager scheduled for Jun 2, 2021 at 12:00 P.M. We will tentatively plan on rescheduling at the end of June, so please let me know if there any specific dates when either you or Mr. Hallager are unavailable. We will plan on sending new notice of deposition when we receive Mr. Hallager's responses to the previously-served written discovery requests.

*Id.*

The undersigned received no response to the letter, including no response to the request for dates of unavailability, thereby necessitating the filing of a motion to compel. *See* DE 27. Plaintiff did not respond to the motion and the Court granted same. *See* DE 29. Plaintiff served responses on July 12, 2021. Thereafter, counsel went back and forth for a couple weeks over the quality of those responses. With the discovery deadline nearing, on August 11, 2021, the undersigned asked counsel for available dates for mediation. A true and correct copy of the email is attached hereto as **Exhibit 3.** The email also stated the deposition would be in person. Mr. Zemel did not provide any dates and did not voice an objection to the deposition being in person. Having received no response, the undersigned was left with no choice but to unilaterally set Plaintiff's deposition. A

---

[3] At a status conference on July 8, 2021, the Hon. Robert T. Numbers, II inquired of Mr. Zemel as to why Plaintiff did not respond to the discovery requests. Mr. Zemel responded with a statement substantially similar to "we never received them." However, in Plaintiff's Unopposed Motion to Amend Scheduling Order, which was signed and filed by Mr. Diamond, and for which the undersigned received a draft from Mr. Benedict, Plaintiff states "[t]he remaining parties have exchanged written discovery and noticed depositions." *See* DE 24, p. 1. The remaining parties are Plaintiff and ARS since Plaintiff settled with Experian. *Id.*

true and correct copy of the email correspondence and cover letter serving the notice of deposition, along with the notice itself, are attached hereto as **Exhibit 4.**

Mr. Zemel responded that same day, stating "I will see if this proposed date works for my client." A true and correct copy of the email correspondence, with appropriate redactions and with older emails in the chain omitted, is attached hereto as **Exhibit 5.** Importantly, Mr. Zemel did not state that he is unavailable on September 3, and he did not voice any objection to the deposition proceeding in person. On Tuesday, August 24, the undersigned sent Mr. Zemel an email asking him to confirm his client is available for the deposition and indicating a need to know ASAP if the deposition needed to once again be rescheduled. A true and correct copy of the email correspondence, with appropriate redactions and with older emails in the chain omitted, is attached hereto as **Exhibit 6.** Mr. Zemel responded to the email on Monday, August 30, stating "[w]ating on confirmation for Friday from client as well as for mediation." A true and correct copy of the email correspondence, with appropriate redactions, is attached hereto as **Exhibit 7.** Once again, Mr. Zemel was silent regarding his own availability and voiced no objection to the deposition being in person.

On Wednesday, September 1 at 10:18 a.m., two days before the deposition and sixteen days before the close of discovery, the undersigned received an email from Mr. Zemel responding to attempts to set up mediation in this case. A true and correct copy of the email is attached hereto as **Exhibit 8.** In the email, Mr. Zemel states, "Friday can't work for the deposition." Mr. Zemel provides no reason why the deposition is unable to go forward, provides no alternative dates, and once again, voices no objection to the deposition proceeding in person. The undersigned responded stating he could not move the deposition again and at the last minute, especially in light of the looming discovery deadline. A true and correct copy of the email is attached hereto as **Exhibit 9.** Mr. Zemel responded saying, "Friday will not work." A true and correct copy of the

4

email, with appropriate redactions and other emails in the chain omitted, is attached hereto as **Exhibit 10.** Again, Mr. Zemel does not elaborate as to why the date is a problem, other than alluding to trouble reaching his client. He proposes one alternative date, which is September 17. However, not only is September 17 the discovery cut off deadline, it is also the date the parties scheduled mediation. A true and correct copy of the email confirming mediation, with appropriate redactions, is attached hereto as **Exhibit 11.** The email attached as Exhibit 10 is also the first time Mr. Zemel raises any objection to the deposition being in person. Incredibly, Mr. Zemel also proposed dates to depose ARS which are almost a month past the close of discovery.

### III.    ARGUMENT

### a. Plaintiff is Not Entitled to a Protective Order

Plaintiff takes issue with ARS unilaterally setting his deposition. While Fed. R. Civ. P. 30(b)(1) does not require consultation prior to the setting of a deposition, the undersigned made extensive efforts to obtain information regarding the availability of both Plaintiff and his counsel. Plaintiff's counsel was wholly unresponsive to such efforts. ARS properly noticed a June 2, in-person deposition of Plaintiff in April. Counsel indicated he would confirm his client's availability but provided no further information on that front, and voiced no objection to the deposition being in person. ARS was forced to postpone that deposition due to Plaintiff's failure to respond to discovery. On May 27, 2021, the undersigned sent to counsel a letter which, among other things, requested information about deposition availability. Once again, the undersigned requested dates on August 11 and received no response. Because Plaintiff's counsel failed to respond to any of these requests, ARS had no choice but to unilaterally set Plaintiff's deposition.

Plaintiff claims *Seabrook Med. Sys. v. Baxter Healthcare Corp.*, 164 F.R.D. 232 (S.D. Ohio 1995) and *Lamar Adver. of S.D., Inc. v. Kay*, 2010 WL 455119 (D.S.D. Feb. 2, 2010) support his position. Plaintiff is mistaken. The defendant in *Seabrook* unilaterally set a third-party deposition

on a date when the plaintiff's counsel was unavailable. *Seabrook*, 164 F.R.D. at 232-33. Defendant's counsel left plaintiff's counsel a voicemail message and, when the call was not promptly returned, presumed consent to the proposed date. *Id.* at 233. The plaintiffs in *Lamar* noticed two depositions to take place eight days before the scheduled trial and more than two months after the close of discovery. *Lamar*, 2010 WL 455119, at *1. The defendant did not stipulate to the taking of late depositions and the plaintiff did not obtain leave of court to take them. *Id.* Relying on *Seabrook*, the court said "'[A]s a matter of professional courtesy, and as a means to avoid future scheduling conflicts[,]' counsel should consult with opposing counsel and the deponent when scheduling a deposition." *Id.* (quoting *Seabrook*, 164 F.R.D. at 233).

Here, the undersigned did attempt to confer. Counsel specifically asked twice for dates, once in May when postponing Plaintiff's deposition, and once again on August 11. When counsel failed to respond, the undersigned served a notice of deposition on August 20. The undersigned then asked for confirmation again on August 24. The whole time, Mr. Zemel kept saying he needed to confirm Plaintiff's availability and—as he concedes in Plaintiff's memorandum—Plaintiff is in fact available for the scheduled deposition. *See* DE 34-1, p. 3 ("Plaintiff's counsel cannot attend the scheduled deposition on September 3, 2021 and requiring Plaintiff to do so, would result in Plaintiff being unprepared for his deposition…").

"Rule 26(c)'s requirement of a showing of good cause to support the issuance of a protective order indicates that the burden is upon the movant to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Intern., Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (citation and quotation marks omitted). The first time the undersigned learned that it was actually Mr. Zemel who had a scheduling conflict was when he read Plaintiff's memorandum. If these conflicts were in place when the deposition was noticed, then Mr. Zemel unnecessarily strung

6

the undersigned along when he knew he was unavailable. If the conflicts were scheduled later, then Mr. Zemel scheduled them knowing they conflicted with the properly noticed deposition. Neither scenario constitutes "good cause." It is also worth noting that Plaintiff's memorandum is silent as to the availability of Mr. Diamond. Mr. Diamond is in North Carolina and is an attorney of record in the case. There is nothing in the record indicating any reason he could not have appeared and defended the deposition.

Rule 26(c) also states "[t]he motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." Plaintiff fails to establish a "good faith" attempt to confer. ARS scheduled Plaintiff's deposition when Plaintiff and his counsel would not provide their availability. After noticing the deposition, ARS again attempted to confirm availability for the noticed date. Mr. Zemel repeatedly stated he needed to confirm Plaintiff's availability. Plaintiff is available. Now, Mr. Zemel identifies two previously undisclosed conflicts he has without attaching any sort of confirmation that those items are scheduled and when they were scheduled. Rather than timely disclose these conflicts, Mr. Zemel, at the last minute, simply stated without explanation that the deposition cannot go forward on Friday. That is not meaningful consultation.

**b. Plaintiff is Not Entitled to Conduct the Deposition by Video Means**

Local Rule 7.1(c)(2) states, in relevant part, "Counsel must also certify that there has been a good faith effort to resolve discovery disputes prior to the filing of any motions." Plaintiff did not satisfy this with respect to his request that the deposition be taken remotely. ARS initial noticed Plaintiff's in-person deposition for June 2, which it ultimately postponed on May 27. The notice was sent on April 16. The notice was out there for a full seven weeks without objection to the deposition being taken in person. The undersigned then requested dates for an in-person deposition and, when none were provided, re-noticed Plaintiff's deposition for September 3, with the notice

being served on August 20. Despite having several exchanges about Plaintiff's availability, counsel voiced no concerns about the deposition being in person until he belatedly included it on the email offering to reschedule the deposition on the same date as the mediation. That hardly represents a good faith effort to resolve the issue.

As for the substance of the request, the undersigned has found remote depositions to be decidedly less effective, especially when the party being deposed is the adverse party in the litigation. As with his opposition to ARS' motion to dismiss, Plaintiff generally alludes to issues with Covid-19 but offers no concrete explanation as to how that affects the proceeding. For example, he does not identify any issues with himself or counsel which would indicate they have any particular susceptibility. He likewise cites no authority that a deposition in a conference room large enough to allow for social distancing has any appreciable effect on someone's chances at contracting Covid-19. Instead, he merely is using the idea of the generalized panic around Covid-19 in an attempt to force his way. This falls short of the "legitimate reason" requirement. *See Jahr v. IU Intern. Corp.*, 106 F.R.D. 429, 431 (M.D.N.C. 1986).

As the party taking the deposition, ARS has a strong preference to take it in person. ARS scheduled the deposition in the jurisdiction where the case was filed and where Plaintiff resides, so any burden on him should be minimal. ARS has no objection if Plaintiff's counsel would like to appear remotely but to date, no such request has been made. As Plaintiff notes, the purpose of allowing remote depositions is to reduce costs. There are minimal costs to him to appear in person. And while there would be travel costs for Plaintiff's counsel, those can be eliminated by Plaintiff's counsel appearing remotely. ARS should therefore be permitted to move forward with the deposition in person.

8

# IV.    CONCLUSION

Plaintiff and his counsel have shown a remarkable lack of diligence in prosecuting this case, and this latest motion is no different. After refusing to provide available dates, Plaintiff now objects to being deposed tomorrow based on previously undisclosed conflicts of only one of his counsel. And despite more than ten-weeks' worth of combined notice that ARS wanted to depose him in person, he belatedly objects without properly consulting the undersigned. The mere fact that Plaintiff filed this motion means the deposition cannot proceed tomorrow, forcing ARS to incur costs to reschedule.

WHEREFORE, ARS respectfully requests that the Court deny Plaintiff's motion in its entirety. Since ARS cannot now depose Plaintiff tomorrow, and since it is wholly unreasonable to ask ARS to depose Plaintiff on the last day of the discovery period on the same day the parties are mediating, ARS requests that the Court order Plaintiff to appear on September 10, 2021 at noon for an in-person deposition at a location to be determined. ARS also requests the Court order Plaintiff to reimburse it for the costs associated with cancelling the deposition tomorrow and for the fees associated with responding to this motion. To the extent necessary and as required by the Court, ARS is happy to move separately for a sanction award and/or to provide the necessary cost affidavits.

Dated: September 2, 2021.                           Respectfully submitted by:

                                                    /s/ David A. Grassi, Jr.
                                                    David A. Grassi, Jr. (N.C. Bar No. 38191)
                                                    The Echols Firm, LLC
                                                    P.O. Box 12645
                                                    Rock Hill, SC 29731
                                                    Phone: (803) 329-8970
                                                    Email: david.grassi@theecholsfirm.com

                                                    *Counsel for Defendant Healthcare Revenue*
                                                    *Recovery Group, LLC d/b/a ARS Account*
                                                    *Resolution Services*

9

## CERTIFICATE OF SERVICE

     I hereby certify that on September 2, 2021, a copy of the foregoing Opposition to Plaintiff's Motion for Protective Order was filed electronically. Service of this filling will be made on all ECF-registered counsel by operation of the Court's electronic filing system, including on the following:

<table>
<tr><td>

Chad Diamond
3356 Maywood Drive
Charlotte, NC 28205
Email: chad.diamond@gmail.com

*Counsel for Plaintiff*

</td><td>

Daniel Zemel
Zemel Law LLC
1373 Broad St., Ste. 203-C
Clifton, NJ 07013
Email: DZ@zemellawllc.com

*Counsel for Plaintiff*

</td></tr>
</table>

/s/ David A. Grassi, Jr.
The Echols Firm, LLC

10